**UNITED STATES of America ex rel. Carmine ZOCCOLILLO, Relator,**

v.

**Hon. Harold W. FOLLETTE, Warden, Green Haven Prison, Stormville, New York, Respondent.**

**No. 66 Civ. 1232.**

United States District Court
S. D. New York.

Aug. 23, 1966.

MEMORANDUM

FRANKEL, District Judge.

Petitioner, serving a sentence of 10 to 20 years upon a plea of guilty in 1952 to an indictment for first-degree robbery (his imprisonment having been interrupted when he was paroled, and then resumed for parole violation) has made a series of state applications, beginning in 1954, for post-conviction relief. In late 1961 he brought a coram nobis proceeding claiming his guilty plea had been induced by a prosecutor's promise that the sentence on such a plea would not exceed five years. After a two-day hearing, that application was denied. The

denial was affirmed by the Appellate Division, First Department, and leave to appeal to the Court of Appeals was denied.

Thereafter, petitioner brought at least two more state proceedings seeking to alter or expunge the sentence on his guilty plea—the first claiming denial of the right of allocution, the second claiming that the sentencing court had been under a factual misapprehension which led to the stern sentence it imposed. Now, upon the failure of these later proceedings, petitioner has revived the thesis of his 1961 coram nobis application as a ground for federal habeas corpus. The main point here is the one he urged in the state—a broken sentence promise by the prosecutor. With it, he couples a claim of inadequate representation at the time of his guilty plea.

■ The latter contention is quite clearly unsubstantial in itself. The papers, including the recorded testimony of petitioner as well as his counsel, indicate that at least by the dim light of ten-year-old memories, petitioner's representation by retained counsel who pled him guilty may not have been an ideal of painstaking devotion. In the end, however, even with all the study devoted to the subject during his years in prison, petitioner does not approach a federal constitutional claim in this aspect. Unless his guilty plea (incidentally reflecting, as the record makes clear, that petitioner had indeed committed the crime) was wrongfully induced, petitioner can show no concrete respect in which his lawyer's services were prejudicially inadequate. Furthermore, in the long train of post-conviction thoughts, this one appears to be raised now for the first time, so that it is barred by the failure to exhaust state remedies. Accordingly, the point mentioned above—the alleged promise by the prosecutor of a sentence lighter than petitioner received—is the only one that has seemed potentially substantial.

Upon study of the pertinent papers, however, this contention turns out to require neither a hearing nor further proceedings of any kind. The question was the subject of a thorough evidentiary hearing by Judge Davidson in the state court. I have considered with care the transcript of that hearing and related exhibits. It is plain beyond question that Judge Davidson assumed petitioner would be entitled to relief if he proved the unkept promise he alleged; that the Judge probed the factual problem with scrupulous attention, pressing the inquiry with some searching questions of his own; and that his decision against petitioner went upon a determination that the evidence petitioner adduced was insufficient.

The determination inevitably entailed judgments of credibility. And, while the transcript does not convey the demeanor aspects of the testimony, there are objective matters of record that tend strongly to support the credibility findings. So, for example, it was developed that both the petitioner and a co-defendant, Guidice, had sought coram nobis in 1954; that both had employed the same lawyer; that Guidice had then asserted an unkept promise by the prosecutor whereas petitioner had not, raising the point only seven years later.

The record also shows that the delay between petitioner's plea and sentence was used by the sentencing judge as a time for exerting pressure to recover some of the stolen property; that it was made clear during this period that the severity of sentence would be affected by the results of this pressure; and that neither petitioner nor any one for him—during the delay, at the time of sentencing, or for years thereafter—raised any question of an alleged promise.

Finally, the testimony of petitioner, his mother, his brother, and a friend is not impressive on the cold record. There are important contradictions. There is, *inter alia*, a serious contradiction of what Guidice swore to in 1954: he said the promise was made to him alone while petitioner and his people now testify that the prosecutor approached the two of them simultaneously. The mother tes-

tified she instructed her son and the lawyer to raise this point in 1954; the lawyer, while he raised it for Guidice (seemingly confirming that defendant's testimony that he was alone with the prosecutor when a promise was made), ignored it for petitioner. More generally, except on their one purported certainty about the alleged promise, petitioner's witnesses were generally vague, unclear, and unimpressive to judge from the transcript.

But we need not judge in that way. The appraisal of credibility has already been made by the state court, affirmed in the state appellate process. The Federal Constitution does not require that a federal judge duplicate the hearing already given where, as here, that hearing bears all the indicia of fairness, understanding, and thoroughness. United States ex rel. Brennan v. Fay, 353 F.2d 56, 59 (2d Cir. 1965); see also United States ex rel. Robinson v. Fay, 348 F.2d 705, 707 (2d Cir. 1965), cert. denied, 382 U.S. 997, 86 S.Ct. 583, 15 L. Ed.2d 484 (1966).

The petition is denied.

It is so ordered.